Theodore C. Max (TM 1742)
Charles A. LeGrand (CL5320)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C
666 Third Avenue
New York, New York 10017
(212) 935-3000
*Attorneys for Plaintiff Louis Vuitton Malletier*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

LOUIS VUITTON MALLETIER,

                        Plaintiff,

       v.

LIMITED BRANDS, INC. and LUCA
ACCESSORIES, INC.,

                  Defendants.

-------------------------------------------------------------x

**05 CV 3765**

05 Civ. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Louis Vuitton Malletier ("Louis Vuitton"), by its attorneys, Mintz, Levin, Cohn,

Ferris, Glovsky and Popeo, P.C., for its Complaint against Limited Brands, Inc. ("Limited

Brands" or "Henri Bendel") and Luca Accessories, Inc. ("Luca") (collectively the "Defendants"),

alleges as follows:

### SUMMARY OF CLAIMS

1.    Louis Vuitton asserts claims under the Lanham Act for infringement and dilution

of its registered and unregistered trademarks in its Serrure S-Lock ("Serrure S") (the "S-Lock

Trademarks"). Louis Vuitton also asserts other federal and state common law and statutory

claims arising out of Defendants' conduct. The S-Lock Trademarks are exclusive Louis Vuitton

designs and are strong, distinctive and famous identifiers of genuine Louis Vuitton products.

2.      Louis Vuitton also asserts claims under the Lanham Act and state law for infringement of Louis Vuitton's trade dress in the Suhali L'Extravagant handbag ("Suhali L'Extravagant Trade Dress"). The combination of elements which comprise the Suhali L'Extravagant Trade Dress has become recognized as a symbol of prestige, quality, and luxury synonymous with Louis Vuitton.

3.      Upon information and belief, Luca recently began knocking off the S-Lock Trademarks and the Suhali L'Extravagant Trade Dress by duplicating replicas of those trademarks and trade dress on a Sarah Neghedi handbag (the "Accused Handbag"), which was then sold to the public in Henri Bendel stores. Given the infinite number of lock designs and trade dress options available to Luca, it is clear that Luca's copying was an intentional effort to trade on the goodwill, fame and renown of the genuine Louis Vuitton products by using the same trade dress as the L'Extravagant handbag trade dress and the S-Lock Trademarks. Such conduct threatens the name and image of Louis Vuitton, as consumers are highly likely to be confused about the source, sponsorship, or affiliation of Luca's products and Louis Vuitton. Unless such infringing and diluting actions are enjoined, Louis Vuitton will suffer irreparable injury.

## JURISDICTION AND VENUE

4.      This is an action for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under 15 U.S.C. § 1125(c); trade dress infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., trademark infringement and unfair competition under New York state law; trademark dilution and injury to business reputation under Section 360-1 and 349 of the New York General Business Law.

5.    This Court has original jurisdiction over Louis Vuitton's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 with respect to Louis Vuitton's claims arising under the laws of the State of New York, including those arising under the New York General Business Law.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is an action brought pursuant to the Lanham Act: Louis Vuitton's claims arise in this district, because a substantial part of the events giving rise to the claims occurred in this district; and Henri Bendel and Luca are doing or have done business within this district with respect to their Accused Handbags.

7.    Upon information and belief, this Court has personal jurisdiction over Limited Brands and Luca because they are present in this district, operate one or more stores here or engage in substantial business and/or sell their infringing goods within this district.

## THE PARTIES

8.    Louis Vuitton is a corporation organized and existing under the laws of France, having its principal place of business at 2 Rue du Pont Neuf, Paris, France. Louis Vuitton is engaged, inter alia, in the business of manufacturing, importing, selling and distributing within the United States, including within this district, designer luggage, purses, handbags, travel leather accessories, high fashion apparel and accessories under, inter alia, its famous S-Lock Trademarks and Suhali trade dress, including the L'Extravagant trade dress. Louis Vuitton operates five stores in New York City, including one at the corner of 57th Street and Fifth Avenue.

9.    Upon information and belief, Henri Bendel is a brand of Limited Brands, Inc., an Ohio corporation with its principal place of business at Three Limited Parkway, Columbus,

NYC 315163v3

Ohio. Limited Brands operates one Henri Bendel store in New York City, located at 712 Fifth Avenue, New York, New York.

10.     Upon information and belief, Luca is a California corporation with its principal place of business at 110 East Ninth Street, Los Angeles, California.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.      The History of Louis Vuitton's S-Lock Trademarks**

11.     Since the 1890's, Louis Vuitton has a featured distinctive brass lock on certain of its original trunk and accessory designs, which signified the quality and craftwork that is Louis Vuitton. In the 1980's, Louis Vuitton created a unique, distinctive and stylized lock from the previously featured lock for use as a trademark on its handbags and accessories, comprised of a shield-shaped hasp with a rivet on either side, a lock plate with four rivets, one on each corner and two release mechanisms, which is known as the Serrure S-Lock. Attached as Exhibit A are photographs showing the S-Lock Trademarks.

**1.      The Serrure S-Lock Mark:  Trademark Registration No. 1,650,162**

12.     Louis Vuitton has registered the Serrure S-Lock Trademark for the design of a lock with the United States Patent and Trademark Office ("USPTO") in International Class 18 (Reg. No. 1,650,162) on goods including:  "Leather and imitation leather products, namely traveling bags, valises, satchels, shopping bags and beach bags in the nature of luggage, hand bags, briefcases, briefcase-type portfolios." ("Serrure S-Lock Trademark").

13.     Registration Number 1,650,162 covers the design below:



14.     The Serrure S-Lock Trademark is described in the Registration Certificate as follows: "The mark consists of a solid brass lock comprised of a hasp with a rivet on either side, a lock plate with four rivets, one on each corner and two release mechanisms, one on either side of the point where the hasp attaches to the lock plate and a lock housing."

15.     The Serrure S-Lock Trademark was registered on July 9, 1991, and has become incontestable pursuant to 15 U.S.C. § 1065. A printout of the registration information for that trademark is attached as Exhibit B.  The Serrure S-Lock Trademark is incontestable by virtue of its exclusive and continuous use in commerce.

**2.     The Common Law Serrure S-Lock Trademark**

16.     Louis Vuitton also owns a common law trademark for a variation of the Serrure S-Lock Trademark in the following design for use in International Class 18, which application is currently pending before the USPTO (Serial No. 76/572,393):



The above-referenced design has been used on Louis Vuitton's designs in interstate commerce since at least as early as 1986. A printout of information from Louis Vuitton's application to register that trademark with the USPTO is attached as Exhibit C.  The Serrure S-Lock Trademark and common law Serrure S-Lock Trademark are referred to collectively as the S-Lock Trademarks.

17.     The Louis Vuitton S-Lock Trademarks have become distinctive and significant signature trademarks of Louis Vuitton.  Throughout the years, the Louis Vuitton S-Lock Trademarks have become well-known and famous indicators of the house of Louis Vuitton.

5

18.     The Louis Vuitton S-Lock Trademarks are famous and well-known and have attained worldwide consumer acceptance and recognition as a source-indicator for goods of Louis Vuitton.  The Louis Vuitton S-Lock Trademarks embody and symbolize supreme luxury and excellence. The Louis Vuitton S-Lock Trademarks have become synonymous with the famous Louis Vuitton design house, have been used widely on fashion accessories, including eyewear, footwear and jewelry, and serve as a symbol of and source for the highest standards in fashion design and quality, representing the very significant and extremely valuable goodwill of Louis Vuitton.

19.     Louis Vuitton has advertised its exclusive fashion apparel and accessory designs bearing the Louis Vuitton S-Lock Trademarks extensively within the United States since as early as the 1990s.  Louis Vuitton has devoted nearly $10 million in advertising, promoting and marketing designs featuring the Louis Vuitton S-Lock Trademarks. Through the extensive advertising and sales of exclusive Louis Vuitton fashion accessory designs, catalogues, unsolicited editorial and media acclaim for such goods, and diligent protection, the Louis Vuitton S-Lock Trademarks have become well-known and famous symbols of quality and workmanship in design.

20.     To date, in excess of forty thousand Louis Vuitton handbags and related accessories (valued at over $66 million) featuring the Louis Vuitton S-Lock Trademarks have been sold in the United States since their introduction. Such goods have been sold through Louis Vuitton stores and on the Internet through www.eluxury.com and in-store boutiques within exclusive department stores such as Neiman Marcus, Macy's, Bloomingdale's, and Saks Fifth Avenue.

NYC 315163v3

21.     Louis Vuitton's S-Lock Trademarks have been featured in advertising, fashion editorials and news media coverage and have become an immediate success with consumers, fashion critics and celebrities.  Many celebrities, including singer-actress Madonna, supermodel Iman, actress Elizabeth Hurley, actress Angie Harmon and others have been reported as carrying different shapes of the Louis Vuitton handbags featuring the Louis Vuitton S-Lock Trademarks.

22.     Unsolicited articles concerning Louis Vuitton handbags featuring the S-Lock Trademarks have appeared in print throughout the world in such periodicals as Women's Wear Daily, W, Harpers Bazaar, Elle, In Style, Marie Claire, Angelino, US Weekly, The New York Times, San Jose Magazine, V, Teen Vogue, Condé Nast Traveler, Hamptons, Los Angeles Times, Time, Philadelphia Style, and Entertainment Weekly.  Many, if not all of these articles, featured a photograph showing one of the Louis Vuitton S-Lock Trademarks.  Copies of recent articles featuring the S-Lock Trademarks are attached as Exhibit D.

23.     Louis Vuitton has devoted substantial time, effort and money to create, market, promote and sell handbags featuring the Louis Vuitton S-Lock Trademarks.  Louis Vuitton has featured prominently handbags bearing one of the Louis Vuitton S-Lock Trademarks in its advertising campaigns.  Copies of advertisements featuring the S-Lock Trademarks are attached as Exhibit E.  Such advertisements from recent Spring-Summer and Fall-Winter advertising campaigns have been featured prominently in periodicals and the news media and, among other places, on billboards in the United States, including in New York at the prestigious corner of Fifth Avenue and 57th Street where the new Louis Vuitton flagship store opened in February 2004, and in Paris, France and Hong Kong, where the Louis Vuitton stores are under renovation. Copies of photographs of the billboards are attached as Exhibit F.

7

24.     As a result of the widespread advertising, publicity, promotion, offering for sale, and sales of handbags bearing Louis Vuitton S-Lock Trademarks, the S-Lock Trademarks have become well known and identified in the minds of the trade and the purchasing public as identifying creations of Louis Vuitton.

25.     The Louis Vuitton S-Lock Trademarks have achieved secondary meaning as identifiers of high-fashion and high-quality products from Louis Vuitton.

**B.      The History of Louis Vuitton's Suhali L'Extravagant Trade Dress**

26.     Louis Vuitton's tradition for excellence comes from its founder Louis Vuitton, who gained fame as the trunk maker of choice to Empress Eugenie in 1853 and started his own company in the next year.  In the era of stagecoaches and steam engines, Louis Vuitton used innovative designs and materials to invent the modern trunk.  The classic Louis Vuitton steamer trunk, and the many generations of Louis Vuitton trunk luggage that followed it, featured polished golden brass studs, golden brass corner plates, positioning of the corners, a distinctive five-tumbler lock featuring a polished golden brass triangular latch and plate and sturdy metal hardware.

27.     In 1893, George Vuitton met John Wanamaker at the 1893 Chicago Exhibition and later signed a distribution agreement to sell Louis Vuitton trunks in New York and Philadelphia; Chicago, Boston, Washington and Los Angeles were later added.  Soon thereafter, Louis Vuitton designs were the luxury accessory of choice and such United States celebrities as Mary Pickford, Marlene Dietrich, Lillian Gish, Ginger Rogers, Douglas Fairbanks and Cary Grant were regular patrons.  Captains of industry such as the Rockefellers, Vanderbilts and the Pierpont Morgans also became devoted customers.  Since that time, Louis Vuitton accessories and luggage have been popular with such United States celebrities and notables as Lauren

8

Bacall, Jerry Lewis, Yul Brynner, Kirk Douglas, Audrey Hepburn, Sharon Stone, Madonna, Sarah Jessica Parker and Jennifer Lopez.

28.    Since its first sale of Louis Vuitton designer steamer trunks in the United States, Louis Vuitton has established a worldwide reputation for innovation, quality and style in women's and men's fashion design, including fine accessories, leather goods, and apparel.  Louis Vuitton's signature and distinctive design elements have been featured on exclusive Louis Vuitton fashion accessory and apparel designs in the United States for nearly a century.

29.    Plaintiff Louis Vuitton has invested hundreds of millions of dollars and over one hundred and fifty years of time and effort to create strong market and consumer recognition of the Louis Vuitton designs throughout the world.  Fashion accessory designs featuring the Louis Vuitton designs have been advertised, promoted, offered for sale and sold throughout the world in Louis Vuitton freestanding boutiques and in-store boutiques in the finest department stores, including Saks Fifth Avenue, Macy's, Neiman Marcus and Bloomingdale's.  Plaintiff Louis Vuitton has widely promoted and advertised its Louis Vuitton accessory designs in magazines, newspapers, in stores and in other media worldwide for decades and, most recently, on the World Wide Web through the Louis Vuitton website www.louisvuitton.com.

30.    Louis Vuitton manufactures, markets, distributes and sells exclusive fashion accessories of the highest quality and craftsmanship.  The key to the success of the Louis Vuitton fashion apparel and accessory designs, including the Louis Vuitton Suhali Collection at issue here, is and has been innovation balanced with respect for the longstanding tradition of excellence established by Louis Vuitton.

9

31.     In Spring 2003, Louis Vuitton introduced innovative and unique handbag designs

under the mark SUHALI as part of its Spring 2003 Collection, including the L'Extravagant

Trade Dress.  Louis Vuitton promotes the Suhali line in this way:

> SUHALI • A range of designer leather goods poised between tradition and
> innovation.  The name conjures up a warm, strong wind, a breeze that
> resonates with myriad of different voices.  A wind whose journey begins
> in southern India, the source of skins that result in a rare, precious leather.
> Since 1854, Louis Vuitton Malletier has demonstrated perfect mastery of a
> traditional yet contemporary craftsmanship.  Six goatskin bags and a line
> of smaller leather goods, supple and hardwearing, sensual and full of
> character.  Available in black, plum, white and blue.

A particular feature of the Suhali Collection, which has been promoted by Louis Vuitton, is the

fittings and hardware, which call to mind the tradition of excellence that is Louis Vuitton:

> METAL FITTINGS • Suhali echoes the attributes of the trunks that have
> forged the reputation of Louis Vuitton.  Here, nothing is incidental.  The
> setting of the polished golden brass studs, the positioning of the corners,
> the fitting of the s-locks, overlays and metal corner plates, etc.  Details that
> signal centuries-old know-how, handed down in the secrecy of the
> workshops.  Each model bears a name, in the reconditioned tradition of
> adjectives given to the trunks of yesteryear -- "Le Talentueux", "Le
> Fabuleux," and "L'Imprevisible".

The distinctive design of the Suhali Collection also has been featured in Louis Vuitton's

catalogues and promotional materials:

> DESIGN • The discreet precision of authentic stitching.  An exercise in
> style.  The rigor of the designer spirit.  The refinement of the finish, down
> to the monogram fabric lining and the inside fittings.  Zip fasteners,
> reinforced edges in calfskin but, above all, the interplay of contrasting top
> stitching and the emphasized edges of leather.  Thread, stitching of base
> and front, shaping, assembling the corners. . . .  There is not a single step
> in the craftsmanship that does not require the interpretation, precision and
> talent of the human hand.

Copies of the pertinent pages of the Louis Vuitton Suhali catalogue are attached as Exhibit G.

This catalogue is dedicated exclusively to the promotion of the Louis Vuitton Suhali Collection

NYC 315163v3

and 30,000 copies of this catalogue were distributed to consumers, the media and to patrons of Louis Vuitton boutiques in 2004 and in 2005.

32.     Within the Suhali Collection, the Suhali L'Extravagant Trade Dress and the classically-inspired design and shape, has garnered significant notoriety and acclaim throughout the fashion world, while also achieving substantial sales for the design house of Louis Vuitton. Although the Suhali Collection represents a new, distinctive and unique collection of Louis Vuitton designs, it is perfectly poised between Louis Vuitton tradition and innovation, demonstrating not only an homage to Louis Vuitton tradition but also a breakthrough in contemporary design.

33.     Louis Vuitton's Suhali handbags are characterized by the exacting standards under which its handbags are designed and made.  The reputation of Louis Vuitton for distinction and high quality in the design and manufacture of handbags is paramount in the retail market.

34.     The immediate success of the Louis Vuitton Suhali handbags is due to its distinctive design features and overall appearance.  The silhouette, size, shape, texture, hardware, fittings, and construction of the Louis Vuitton Suhali handbags are unique and unmistakable. The distinctive Louis Vuitton Suhali designs, based upon the extensive editorial notoriety and the advertising and sales to date, have made Louis Vuitton consumers aware of the distinctive shape and design of the Louis Vuitton Suhali handbags and their distinctive design features, including the Suhali L'Extravagant Trade Dress.

35.     The Louis Vuitton Suhali L'Extravagant Trade Dress is comprised of a rectangular-shaped handbag with round leather handles that are sewn on each side of the bag and attached to the handbag with square golden loops which link with a pentagon-shaped leather base which is affixed to the handbag with four golden rivet studs, a prominent external patch pocket

which features a Serrure S-Lock and is accentuated by an overlay of leather that is affixed with double-stitching. The four lower leather corners are set with golden metal squares, golden rivet studs appear on the handbag to accentuate the leather bands which border the leather panels which comprise the handbag. The leather bands, the golden brass metal hardware, and the golden round rivets are placed in a distinctive pattern on the handbag to give the appearance of the ornamentation of early steamer trunks evoking the fashion and design heritage and tradition of Louis Vuitton. The combination of these elements, which comprise the Suhali L'Extravagant Trade Dress, has become recognized as a symbol of prestige, quality and luxury synonymous with Louis Vuitton. Copies of photographs depicting the Suhali L'Extravagant Trade Dress are attached as Exhibit H.

36.     The aforementioned design features, including the silhouette, profile and size of the L'Extravagant handbag, the size and placement of the elements of the bag, texture, construction, the component layout and stitching pattern, the design configuration and placement of hardware, and other design aspects combine to give the Louis Vuitton Suhali L'Extravagant Trade Dress a distinctly original and arbitrary appearance. Louis Vuitton has invested substantial sums and enormous quantities of time and effort to create strong market and consumer recognition for the Louis Vuitton Suhali Collection, including the L'Extravagant Trade Dress throughout the world.

37.     The Louis Vuitton Suhali L'Extravagant Trade Dress has been advertised and promoted widely through newspaper and magazine editorials and billboards, in Louis Vuitton catalogues, and on the Internet. Louis Vuitton's promotional materials and catalogues featuring the Louis Vuitton Suhali Collection prominently display the handbag in question here, showing the Suhali L'Extravagant Trade Dress. Editorial fashion and news features also have called

12

attention to the distinctive appearance of the Louis Vuitton Suhali Handbags and in numerous instances have featured photographs of the Suhali L'Extravagant Trade Dress.

38.    Louis Vuitton has devoted substantial time, effort, and money to create, market, promote and sell the Louis Vuitton Suhali handbag collection, including the handbags featuring the Suhali L'Extravagant Trade Dress.  Louis Vuitton has featured the Suhali Collection in its Spring-Summer 2003, Pre-Fall 2003, and Fall-Winter 2003 advertising campaigns and has expended over one million dollars to publicize and promote the Suhali Collection.  Each of the Louis Vuitton storefront boutiques featured approximately 12' x 6' photographs of handbags from the Suhali Collection.  Advertisements for the Suhali Collection were featured in print and point of purchase advertising at Louis Vuitton boutiques throughout the world and such United States magazines as Vogue, Marie Claire, Allure, Elle, Harper's Bazaar, Chicago Tribune, Town & Country, W, In Style, WWD, New York Times Sunday Magazine, Vanity Fair and Architectural Digest.  Louis Vuitton also advertises its Suhali Collection on the worldwide web at www.louisvuitton.com.  Copies of such advertisements are attached as Exhibit I.

39.    Louis Vuitton, in conjunction with its Spring 2003 Global Catalogue, dedicated its cover, centerfold and an additional six pages to the Suhali Collection.  The Spring 2003 Global Catalogue was distributed to 2500 consumers, fashion editors and patrons of Louis Vuitton boutiques.  The Pre-Fall 2003 Louis Vuitton Catalogue and the Fall and Winter 2003/2004 Catalogue featured the Suhali Collection.  Copies of pertinent portions of the Spring 2003 Catalogue, the Spring 2003 Global Catalogue, Pre-Fall 2003 Louis Vuitton Catalogue and the Fall/Winter 2003/2004 Catalogue are attached as Exhibit J.  The L'Extravagant Trade Dress also was featured in over 30,000 Suhali product catalogues and nearly 30,000 Louis Vuitton product catalogues distributed in 2004 and 2005.

13

40.    To date, the Suhali Collection has earned an unprecedented sum of over Twenty Million Dollars for Louis Vuitton in the United States alone.  To date, over One Hundred Twenty-Five Thousand Dollars of handbags featuring the Louis Vuitton Suhali L'Extravagant Trade Dress have been sold in the United States alone since its introduction.

41.    The Suhali Collection has been featured in advertising, fashion editorials and news media coverage and, as a result, has become an immediate success with consumers, fashion critics and celebrities. The Suhali Collection, including handbags featuring the L'Extravagant Trade Dress have been featured widely in Louis Vuitton catalogues and on the www.louisvuitton.com website.

42.    Unsolicited articles or mentions concerning the Suhali Collection have appeared in print throughout the world in such periodicals as Harper's Bazaar, Elle, People, V, The New York Times, In Style, Chicago, Women's Wear Daily Accessories, Vogue, Financial Times, New Straits Time, Ocean Drive and Quest.  With respect to Harpers, In Style, Quest, Chicago and Ocean Drive, these articles noted and commented favorably upon the unique and distinctive trade dress and/or featured a photograph of the Louis Vuitton Suhali "L'Extravagant" Handbag. The Louis Vuitton Suhali L'Extravagant trade dress has been featured in fashion editorials and a review of the Louis Vuitton collection on www.style.com.  Through these efforts, the distinctive Louis Vuitton Suhali L'Extravagant Trade Dress has become famous and renowned.  Copies of the articles featuring the Louis Vuitton Suhali L'Extravagant Trade Dress are attached as Exhibit K.

43.    Forbes Global, noted the long waiting lists for the Suhali Collection created by the unprecedented demand: "Louis Vuitton the crown jewel of the LVMH empire, overseen by artistic director Marc Jacobs, continues to shine, with double-digit organic sales growth through

14

June and especially strong sales in the U.S. and Japan.  Waiting lists for the Company's Suhali goatskin leather goods are getting longer. . . ." (Emphasis added).

44.     As a result of the widespread advertising publicity, promotion, and sales of the Louis Vuitton "L'Extravagant" Handbag, the Suhali L'Extravagant Trade Dress has become well known and identified in the minds of the trade and the purchasing public as identifying the Louis Vuitton Suhali Bags, and Suhali L'Extravagant Trade Dress as a creation of Louis Vuitton.  The subject Suhali L'Extravagant Trade Dress has come to have secondary meaning indicative of origin of these products with Louis Vuitton, and have come to be business assets of immense value to Louis Vuitton.

### FIRST CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

45.     Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 44, above.

46.     Louis Vuitton possesses exclusive trademark rights in the Serrure S-Lock Trademarks.

47.     Upon information and belief, the Defendants, without Louis Vuitton's consent, have advertised and offered for sale handbags (the "Accused Handbag") that feature a particular trade dress, including a clasp that is substantially indistinguishable and likely to cause confusion with the Serrure S-Lock Trademark in interstate commerce throughout the United States, thereby infringing Louis Vuitton's rights in its Serrure S-Lock Trademark.  Photographs of the Accused Handbag are attached as Exhibit L.

48.     Defendants' lock featured on the Accused Handbag is confusingly similar to the lock featured on the Louis Vuitton Serrure S-Lock Trademark, and Defendants' use of such

15

trademarks was and is a deliberate attempt to imitate the Louis Vuitton Serrure S-Lock Trademark and to trade on Louis Vuitton's goodwill and fame.

49.    The lock featured on the Accused Handbag creates the same general overall impression as the Louis Vuitton Serrure S-Lock Trademark.

50.    Defendants have been and are continuously infringing and inducing others to infringe the Louis Vuitton Serrure S-Lock Trademark through such acts.

51.    Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among the general consuming public and trade as to the origin and quality of the Accused Handbag.

52.    Defendants' above-described unlawful actions constitute infringement of the Louis Vuitton Serrure S-Lock Trademark in violation of Louis Vuitton's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

53.    Defendants have been and are infringing the Louis Vuitton Serrure S-Lock Trademark with full knowledge of or willful disregard for Louis Vuitton's exclusive rights in the Serrure S-Lock Trademark and knowing that such marks are associated exclusively with Louis Vuitton and designate goods of Louis Vuitton.

54.    Louis Vuitton has notified Defendants that they have infringed the Serrure S-Lock Trademark and Suhali Trade Dress by virtue of their conduct described herein. On August 27, 2004 and on October 1, 2004, respectively, counsel for Louis Vuitton wrote to defendants Luca Accessories, Inc. and Limited Brands, Inc. and demanded that each immediately cease and desist all manufacture, sale, distribution and promotion of the Accused Handbag. Defendant Limited Brands, Inc. has agreed to cease and desist from the sale and manufacture of the Accused

16

Handbag. Defendant Luca has agreed to cease the manufacture of the Accused Handbag but has not agreed to refrain from selling the Accused Handbags.

55.     Defendants' conduct has been intentional, willful, wanton, fraudulent and malicious, and was undertaken with an intent to reap the benefit of Louis Vuitton's goodwill and the fame and notoriety of its well-known Louis Vuitton Serrure S-Lock Trademark.

56.     Defendants' conduct has caused and is causing immediate and irreparable injury to Louis Vuitton, and to its goodwill and reputation, and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

57.     Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

58.     Louis Vuitton has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN**
**AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

59.     Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 58, above.

60.     Louis Vuitton possesses exclusive trademark rights in the Louis Vuitton S-Lock Trademarks.

61.     Defendants, without Louis Vuitton's consent, have advertised, offered for sale, sold and distributed their Accused Handbag in interstate commerce throughout the United States, thereby infringing Louis Vuitton's rights in the Louis Vuitton S-Lock Trademarks.

62.     Upon information and belief, recently and after the extensive advertising, publicity and promotion of Louis Vuitton's handbags featuring the Louis Vuitton S-Lock Trademarks, Defendants commenced the manufacture, offering for sale, sale and distribution of

17

the Accused Handbag which was intentionally created to be identified with, similar to, and to imitate the Louis Vuitton S-Lock Trademarks.

63.    Defendants' activities are likely to cause confusion among the general public and in the trade as to the origin and sponsorship of the Accused Handbag.

64.    Defendants have used designs or other symbols, which tend to falsely describe or represent the Accused Handbags, including the imitation of the S-Lock Trademarks.

65.    Upon information and belief, Defendants have caused their Accused Handbag to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Louis Vuitton.

66.    Defendants' infringing and unlawful actions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67.    Defendants' conduct is causing immediate and irreparable injury to Louis Vuitton and to its good will and reputation and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

68.    Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

69.    Louis Vuitton has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125 (c)(1))

70.    Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 69, above.

71.    Prior to Defendants' manufacture, offering for sale, sale and distribution of the Accused Handbag, on its products, Louis Vuitton's Louis Vuitton S-Lock Trademarks had

18

become famous and well-known throughout the United States within the meaning of 15 U.S.C. § 1125(c).

72.     By reason of Louis Vuitton's extensive advertising and promotion of products bearing the Louis Vuitton S-Lock Trademarks, the sale of goods bearing the S-Lock Trademarks, the registration and protection of the S-Lock Trademarks, and extensive unsolicited news and editorial coverage of designs bearing the S-Lock Trademarks, the S-Lock Trademarks have become famous and well-known and are uniquely and exclusively associated with Louis Vuitton and Louis Vuitton designer fashion accessories and apparel.

73.     Upon information and belief, Defendants are and have been engaged in commercial use of the Louis Vuitton S-Lock Trademarks or nearly identical trademarks on its Accused Handbag in interstate commerce.

74.     Upon information and belief, Defendants' above-described unlawful activities have caused actual dilution and have disparaged, damaged and blurred and lessened the distinctiveness of the Louis Vuitton S-Lock Trademarks, or are likely to cause actual dilution, disparagement, and blurring of the Louis Vuitton S-Lock Trademarks.

75.     Upon information and belief, Defendants engaged in such infringing and diluting actions intentionally or with a reckless disregard for or willful blindness to Louis Vuitton's rights.

76.     Upon information and belief, Defendants engaged in such infringing and diluting actions for the purpose of trading on Louis Vuitton's reputation and diluting the Louis Vuitton S-Lock Trademarks.

77.     Defendants' conduct is causing immediate and irreparable injury to Louis Vuitton and to its good will and reputation and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

78.     Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

79.     Louis Vuitton has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125 (a))

80.     Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 79, above.

81.     Upon information and belief, after the extensive advertising, publicity and promotion by Louis Vuitton of its Suhali Collection and after the Suhali L'Extravagant Trade Dress had come to have a secondary meaning, defendants Luca and Henri Bendel commenced the distribution and sale in the United States of the Accused Handbag which, upon information and belief, was intentionally created to be identified in all respects to the Louis Vuitton Suhali L'Extravagant handbag. Defendants have seized upon all of the signature attributes to the Suhali L'Extravagant Trade Dress, copying line-by-line, stitch-by-stitch, the design of the handbag. Defendant copied all of the golden brass hardware, the trunk-like style, the handles, the zippers, the exact placement and spacing of the brass rivets and the brass corner plates. The elements and design of the Defendants' handbag are simply knockoffs of the original Louis Vuitton Suhali L'Extravagant Trade Dress.

82.     To a consumer viewing the bag worn by another consumer or looking at the bag in a store, the Accused Handbag is nearly indistinguishable from and appears almost identical to the corresponding Louis Vuitton Suhali L'Extravagant handbag and the respective trade dress.

20

The Accused Handbag which Defendants sell features no trademark or identification as to source. The visual differences between the Suhali L'Extravagant Trade Dress and the infringing Accused Handbag knockoff are minimal.

83.     The similarities between the trade dress of the infringing knockoff Accused Handbag and the Louis Vuitton Suhali L'Extravagant Trade Dress are striking. The placement of the signature hardware, the placement of the elements, the design of the silhouette and arrangement of trunk-like features of the L'Extravagant Trade Dress are mimicked closely in the Accused Handbag. Only a scrutinizing look at the construction of the infringing Accused Handbag reveals that the workmanship and quality of the infringing Accused Handbag is inferior. Photographs showing the Suhali L'Extravagant Trade Dress and the infringing Accused Handbag are attached as Exhibits H and L, respectively. The original Louis Vuitton Suhali handbags are made by hand.

84.     Upon information and belief, Defendants intentionally copied the relative proportions, rectangular, soft structured style, profile and appearance of the Louis Vuitton Suhali L'Extravagant Trade Dress, but also used substantially identical hardware and topstitching positioned in exactly the same way.

85.     Upon information and belief, Defendants also adopted the same piece assembly and stitching patterns as the Louis Vuitton Suhali L'Extravagant bags and otherwise identically duplicated the well-recognized features of the Louis Vuitton Suhali L'Extravagant bags so that, to the consumer, the Accused Handbag is indistinguishable from and appears identical to the Louis Vuitton Suhali L'Extravagant Trade Dress.

NYC 315163v3

86.    Defendants' Accused Handbag bears a striking resemblance to and is a blatant and obvious imitation of the Suhali L'Extravagant Trade Dress featured on genuine Louis Vuitton Suhali L'Extravagant Handbags.

87.    The Suhali L'Extravagant Trade Dress and the trade dress of the Accused Handbag create the same general overall impression and have the same "look and feel."

88.    Upon information and belief, the close similarities between the Suhali L'Extravagant Trade Dress and the trade dress of the Accused Handbag is not a mere coincidence.  Upon information and belief, Defendants' sale of its Accused Handbag in the United States is intentionally designed to deceive and has deceived customers and consumers, who view the Accused Handbag after it has been purchased, into believing that the Accused Handbag is designed or licensed by Louis Vuitton.

89.    Defendants have without permission, willfully, and with the intention of benefiting from the reputation and good will of Louis Vuitton, imitated the shape, size, texture, style, layout and design of the Suhali L'Extravagant Trade Dress.

90.    As a consequence, the trade dress of the Accused Handbag is likely to deceive and divert and has deceived and diverted customers away from the competing genuine Louis Vuitton Suhali L'Extravagant Trade Dress.

91.    There is a strong likelihood that consumers will be confused between the Louis Vuitton Suhali L'Extravagant Trade Dress and the Accused Handbag.

92.    Given the proximity of plaintiff Louis Vuitton's and Defendant Limited Brands' Henri Bendel stores in New York, consumers will likely shop in both stores.  Louis Vuitton Suhali Handbags are offered for sale at the Louis Vuitton flagship, One East 57th Street, which is at the corner of Fifth Avenue and 57th Street in New York.  Henri Bendel's store, which is

22

located at 712 Fifth Avenue, between 55th and 56th Street, is but two blocks from Louis

Vuitton's flagship store.  This close proximity will add to the confusion of the consumer and

affect sales of genuine Louis Vuitton Suhali L'Extravagant Trade Dress.

93.     There is a substantial risk that consumers who view the Accused Handbag on sale

or as carried after sale by purchasers of the Accused Handbag will be confused by Defendants'

deception, and mistakenly will believe that the Accused Handbag is designed and manufactured,

licensed, sponsored or authorized by Louis Vuitton, when in fact it is not.

94.     The conduct of defendants Luca and Limited Brands, as alleged in the foregoing

paragraphs, constitutes trade dress infringement and unfair competition in violation of

Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)), which prohibits the use in commerce in

connection with the sale of goods of any word, term, name, symbol, or device, or any

combination thereof which is likely to cause confusion, or to cause mistake, or to deceive as to

the source of the good.

95.     As a direct and proximate result of the willful and wanton conduct of Defendants,

Louis Vuitton has been injured and will continue to suffer irreparable injury to its business and

reputation unless Defendants are restrained by this Court from infringing the Suhali

L'Extravagant Trade Dress.

96.     Defendant's unlawful actions have caused and are continuing to cause actual

damages to Louis Vuitton in an amount that will be established at trial.

97.     Louis Vuitton has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT

98.     Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein,

the allegations of paragraphs 1 through 97, above.

23

99.     Defendants have manufactured, advertised, offered for sale and sold, and distributed in commerce the Accused Handbag without Louis Vuitton's consent, thereby infringing the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress.

100.    As a result of the confusing similarity of the spurious trademarks employed by Defendants, the manufacture, advertising, offering for sale and sale, and distribution of the Accused Handbag by Defendants constitutes infringement of Louis Vuitton's exclusive common-law rights in and to the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress in that such use is likely to cause and has caused confusion, deception and mistake in the minds of the public with respect to the origin, source, sponsorship, or affiliation of the Accused Handbag.

101.    Defendants' use of marks identical and/or confusingly similar to the Louis Vuitton S-Lock Trademarks and L'Extravagant Trade Dress to identify the Accused Handbag has been and continues to violate and infringe Louis Vuitton's common law trademark rights in and to the Louis Vuitton S-Lock Trademarks and L'Extravagant Trade Dress and constitutes common law trademark infringement under New York law.

102.    Defendants' misconduct is causing immediate and irreparable injury to Louis Vuitton and to its good will and reputation and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

103.    Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

104.    Louis Vuitton has no adequate remedy at law.

24

## SIXTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

105.    Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 105, above.

106.    Defendants' use of marks identical and/or confusingly similar to the Louis Vuitton S-Lock Trademarks and L'Extravagant Trade Dress and Defendants' other predatory conduct falsely suggests an association with, or sponsorship, license or authorization from, Louis Vuitton.

107.    Upon information and belief, Defendants' conduct described herein was calculated to deceive or confuse the public and to enable Defendants to profit unjustly from the goodwill of Louis Vuitton in the Louis Vuitton S-Lock Trademarks, the L'Extravagant Trade Dress, and other trademark rights of Louis Vuitton.

108.    Defendants have acted in bad faith, with intent to unfairly compete and unfairly capitalize on the goodwill associated with the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress.

109.    Defendants' actions constitute unfair competition with Louis Vuitton under the common law of the State of New York.

110.    Defendants' unfair competition is causing immediate and irreparable injury to Louis Vuitton and to its good will and reputation and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

111.    Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

112.    Louis Vuitton has no adequate remedy at law.

25

## SEVENTH CLAIM FOR RELIEF
## VIOLATION OF SECTION 360-1 OF THE NEW YORK GENERAL BUSINESS LAW

113.     Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 112, above.

114.     The Louis Vuitton S-Lock Trademarks and L'Extravagant Trade Dress are distinctive and have acquired secondary meaning in the marketplace.

115.     Defendants' use of marks identical and/or confusingly similar to the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress, have reduced or are likely to blur and reduce their selling power and their ability to serve as source and product identifiers.

116.     Defendants' use of marks identical and/or confusingly similar to the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress, and its other conduct discussed above, has tarnished or is likely to tarnish the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress.

117.     Defendants' use of marks identical and/or confusingly similar to the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress, and its other conduct discussed above, has reduced or is likely to reduce the reputation and standing of the Louis Vuitton S-Lock Trademarks and the L'Extravagant Trade Dress, in the eyes of consumers as identifiers of Louis Vuitton's designs.

118.     Defendants' trademark dilution violates Section 360-1 of the New York General Business Law.

119.     As a direct and proximate result of Defendants' willful and wanton dilution and misconduct, Louis Vuitton's business reputation and the good will associated with Louis Vuitton's S-Lock Trademarks and the L'Extravagant Trade Dress and the favorable associations

NYC 315163v3

that consumers and the public make with the Louis Vuitton S-Lock Trademarks have been impaired and diminished, or are likely to be impaired and diminished.

120.    Defendants' dilution and misconduct is causing immediate and irreparable injury to Louis Vuitton and to its good will and reputation and, unless enjoined by this Court, will continue to both irreparably harm Louis Vuitton and deceive the public.

121.    Defendants' unlawful actions have caused and are continuing to cause actual damages to Louis Vuitton in an amount that will be established at trial.

122.    Louis Vuitton has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**
**(VIOLATION OF SECTION 349 OF THE**
**NEW YORK GENERAL BUSINESS LAW)**

123.    Plaintiff Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations of paragraphs 1 through 122, above.

124.    Defendants have without permission, willfully, and with the intention of benefiting from the reputation and good will of Louis Vuitton, imitated the shape, size, texture, style, layout, and design of the S-Lock Trademarks and the Suhali L'Extravagant Trade Dress.

125.    There is a very great likelihood of confusion to consumers between the Louis Vuitton S-Lock Trademarks and the Suhali L'Extravagant Trade Dress and the Accused Handbag.

126.    The trade dress of the Accused Handbag is likely to deceive and divert and has deceived and diverted consumers away from the competing genuine Louis Vuitton handbags because the S-Lock Trademarks and the Suhali L'Extravagant Trade Dress is material to consumers' purchasing decision.

127.    There is a substantial risk that consumers who view the Accused Handbag on sale or as used post-sale by purchasers of the Accused Handbag will be confused by Defendants'

27

deception and mistakenly will believe that the Accused Handbag is designed and manufactured, licensed, sponsored or authorized by Louis Vuitton, when in fact it is not.

128.   As a direct and proximate result of the willful and wanton actions of Defendants, consumers seeking genuine goods of Louis Vuitton have been harmed by Defendants' deception.

129.   The conduct of Defendants violates Section 349 of the New York General Business Law.

130.   As a direct and proximate result of the willful and wanton actions and conduct of Defendants, Louis Vuitton also has been injured and will continue to suffer irreparable injury to its business and reputation unless Defendants are restrained by this Court from violating Section 349, including by use of the trade dress on the Accused Handbag, and by other wrongful conduct as set out above.

131.   Plaintiff Louis Vuitton and consumers have no adequate remedy at law.

WHEREFORE, Louis Vuitton seeks judgment as follows:

A.   Preliminarily, during the pendency of this action, and permanently after final hearing, enjoining both Luca and Limited Brands, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them: (l) from using in any way any of Louis Vuitton S-Lock Trademarks, including the Serrure S-Lock Trademarks and, any designation or design so similar as to be likely to cause confusion, mistake or deception with, or to dilute in any way, the Louis Vuitton S-Lock Trademarks, including but not limited to the Accused Handbag; (2) from directly or indirectly violating the rights of plaintiff under 15 U.S.C. § 1125, including the manufacture, importing, exporting, distribution, and advertising, offer for sale or sale of any goods throughout the world which are likely to cause confusion, mistake or to deceive as to the origin, sponsorship, approval or association with plaintiff's: (a)

28

S-Lock Trademarks and/or (b) Suhali L'Extravagant Trade Dress, including, but not limited to, the Accused Handbag; (3) from directly or indirectly violating the rights of plaintiff Louis Vuitton under New York State common law, including manufacturing, importing, exporting, distributing, advertising, offering for sale or selling any goods throughout the world which are likely to cause confusion, mistake or to deceive as to the origin, sponsorship, approval or association with plaintiff's: (a) S-Lock Trademarks and/or (b) Suhali L'Extravagant Trade Dress, including, but not limited to, the Accused Handbag; (4) from directly or indirectly, in violation of N.Y. Gen. Bus. Law § 360-1, causing the dilution, blurring or tarnishment of plaintiff's: (a) S-Lock Trademark and/or (b) Suhali L'Extravagant Trade Dress, or using any trademark or trade dress likely to cause dilution, blurring or tarnishment of plaintiff's: (a) S-Lock Trademark and/or (b) Suhali L'Extravagant Trade Dress in any manner whatsoever, including, but not limited to, manufacturing, importing, exporting, distributing, advertising, offering for sale or selling any goods featuring the Accused Handbag; (5) from directly or indirectly deceiving consumers and injuring the business of plaintiff by violation of N.Y. Gen. Bus. Law § 349, including manufacturing, importing, exporting, distributing, advertising, offering for sale or selling any goods throughout the world which are likely to cause confusion, mistake or to deceive as to the origin, sponsorship, approval or association with plaintiff's: (a) S-Lock Trademark and/or (b) Suhali L'Extravagant Trade Dress, including, but not limited to, the Accused Handbag; and (6) from unfairly competing with Louis Vuitton in any manner;

B.      Ordering both Luca and Limited Brands to sequester, forfeit and deliver up for destruction all products bearing the Accused Handbag and all Accused Handbags and components thereof in Defendants' possession, custody, or control, or in the possession, custody or control of any of their agents or representatives;

C.      Requiring both Luca and Limited Brands to compensate Louis Vuitton for the actual damages it has sustained from Defendants' infringing conduct;

D.      Requiring both Luca and Limited Brands to account for and pay over to Louis Vuitton all gains, profits and advantages derived by Defendants from their trademark infringement, dilution, and unfair competition;

E.      Ordering both Luca and Limited Brands to pay as damages for their misconduct alleged herein an amount equal to the greater of three times the amount of the actual damages suffered by Louis Vuitton or three times the amount of Defendants' wrongful profits;

F.      Ordering both Luca and Limited Brands to pay an appropriate amount as punitive damages to deter further willful and wanton misconduct, to prevent future confusion or deception of the public, and to prevent and deter future unfair competition with Louis Vuitton;

G.      Ordering both Luca and Limited Brands to pay for corrective advertising in each and every publication or medium in which any of the Accused Handbags has been advertised, with those corrective advertisements to be of comparable size, cost and duration to Defendants' advertising;

H.      Directing that both Luca and Limited Brands deliver up for destruction all catalogues, advertising and promotional materials in its possession, custody or control, or in the possession, custody or control of any of its agents, which feature any of the Accused Handbags or which the Court shall find to have facilitated Defendants' acts of unfair competition with plaintiff or its dilution of the Louis Vuitton S-Lock Trademarks and Suhali L'Extravagant Trade Dress;

I.      Awarding Louis Vuitton its costs and attorneys' fees incurred in this action;

J.      Awarding Louis Vuitton prejudgment interest; and,

30

K.     Granting Louis Vuitton such alternative or additional relief that the Court may deem just and proper or which the interests of justice may suggest or require.

### JURY DEMAND

Louis Vuitton demands trial by jury of the claims of its allegations in this action.

Dated:  April 12, 2005
        New York, New York

                      MINTZ, LEVIN, COHN, FERRIS,
                      GLOVSKY AND POPEO, P.C.

By: _____
                      Theodore C. Max (TM 1742)
                      Charles A. LeGrand (CL5320)
                      666 Third Avenue
                      New York, New York 10017
                      (212) 935-3000

                      Attorneys for Plaintiff Louis Vuitton Malletier

NYC 315163v3